UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ANGELA D. CLEMONS,
          Plaintiff,

v.                                                       Action No. 2:07cv244

HOME SAVERS, LLC.,
          Defendant.

**OPINION & ORDER**

This matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c)(1) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. On June 19, 2007, all parties consented to trial before a Magistrate Judge, and an order of reference was filed June 27, 2007.

**I. PROCEDURAL AND FACTUAL BACKGROUND**

In 1995, Plaintiff, Angela D. Clemons ("Clemons") purchased a home at 2016 Candlelight Drive in Chesapeake, Virginia for $63,800 by borrowing all but $300 of the purchase price. Clemons subsequently refinanced her mortgage loan three times before she fell behind on her payments in 2006. At that time, her monthly mortgage payments were $847.20. Shortly after receiving notice from her mortgage lender of pending foreclosure proceedings, Clemons contacted Defendant, Home Savers, LLC ("Home Savers") – whose billboard advertisement reading "stop foreclosure, save your home, save your equity, save your credit" she had seen on her drive to work. Pl. Dep. 37:25-38:2, Aug. 3, 2007.

At the parties' first meeting, Home Savers's CEO, William F. Law, Jr. ("Law") and President, Ulysses "Chuck" Gray ("Gray") suggested that they could help Clemons avoid foreclosure by purchasing her home, leasing it back to her, and granting her an option to repurchase after an agreed upon period of time. Clemons consented to the proposed transaction, and on October 20, 2006, at the law office of White & Selkin in Norfolk, Virginia, the parties executed a number of documents including an Agreement of Sale, Deed of Assumption, and Lease Agreement.[1] Although Albert C. Selkin, Esq. ("Selkin"), the attorney that conducted the real estate closing, summarized each document and offered Clemons an opportunity to ask questions, Clemons does not recall posing a single question before or after signing the documents. She further acknowledges that the documents accurately set forth her agreement with Home Savers.

Pursuant to the Agreement of Sale, Home Savers assumed Clemons's mortgage in the amount of $109,576.81, and paid: $3,400.88 in arrearages, $847.02 for Clemons's November 2006 mortgage payment, and $800.00 toward Clemons's outstanding payday loans. Thus, Home Savers paid a total of $114,624.71 for the property.[2]

Under the terms of the Lease Agreement, which included an Option to Purchase Addendum ("Option Agreement"), Clemons agreed to pay rent in the amount of $850 for five months. At the

---

[1] At closing, the parties also signed a HUD-1 Settlement Statement ("Settlement Statement") which incorrectly indicated that Home Savers would pay off – instead of assume – Clemons's mortgage. Clemons acknowledges that she did not know or care whether Home Savers would pay off the balance of her mortgage. Pl. Dep. 90:17-22. The defendant maintains that the inaccuracy was a result of scrivener's error and points out that the Settlement Statement was amended by Selkin on June 22, 2007.

[2] At the time of the transaction, the property was valued at $125,000 by the Chesapeake City Assessor. Yet, based on the sale price of comparable property in the Chesapeake housing market, Gray and Law estimated the fair market value of the property at between $150,000 and $190,000. Home Savers never obtained an actual appraisal of the property.

end of that time, the Option Agreement provided Clemons an opportunity to repurchase the property for 90 percent of its then appraised fair market value. To exercise the option, Clemons was to make timely rental payments as prescribed by the Lease Agreement, provide Home Savers with written notice of her intent to repurchase by February 20, 2007, request or obtain an appraisal of the property in February or March 2007, and pay the option price by March 31, 2007. If Clemons chose not to exercise her option to purchase and instead voluntarily vacated the home, the Option Agreement required Home Savers to pay Clemons an additional $2,000.

On October 24, 2006, Home Savers recorded the Deed of Assumption with the Clerk of the Chesapeake Circuit Court. Thereafter, Clemons began paying rent to Home Savers and in a letter dated February 19, 2007, she gave Home Savers written notice of her intent to repurchase the property. But, despite her clearly expressed intent, Clemons failed to comply with the remaining terms of the Option Agreement. She never requested or obtained an appraisal of the property. She was delinquent on her March rental payment. And, while she attempted to obtain financing, Clemons was unable to pay the option price by March 31, 2007.

Once Clemons notified Home Savers that her March rental payment would be late, the parties discussed and executed an additional agreement. Pursuant to the agreement, dated March 17, 2007, Clemons acknowledged that Home Savers owned the property and Home Savers agreed to extend Clemons's lease by one month until April 30, 2007, at which time Clemons was to amicably vacate the property. Home Savers later notified Clemons by letter that it would begin eviction proceedings if she had not vacated the property by May 1, 2007.

On April 18, 2007, Clemons filed an eleven-count complaint in the Circuit Court of Chesapeake alleging violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.,* as well as state law claims including fraud, conversion, unjust enrichment and breach of implied covenant of good

faith and fair dealing. On May 24, 2007, Home Savers removed the case to this Court based on federal question jurisdiction. The Court entered an Order dismissing Count II of Clemons's claim on September 21, 2007. Now before the Court are cross motions for summary judgment, in which Clemons and Home Savers each seek summary judgment as to all counts.

## II.  STANDARD OF REVIEW

Summary judgment should be granted if, after viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Facts are deemed material if they might affect the outcome of the case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Moreover, the evidence presents a "genuine" issue of material fact if a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248. Either party may submit as evidence "pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits" to support or rebut a summary judgment motion. Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323. Alternatively, a party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson, 477 U.S. at 256. With these controlling principles in mind, the Court turns to the merits of the parties' motions for summary judgment.

## III.  ANALYSIS

**A.      Truth In Lending Act, 15 U.S.C. § 1601 *et seq.* (Count VI)**

The pivotal question before this Court is whether the instant transaction was an absolute sale

4

or, under the equitable mortgage doctrine, was actually a loan. If the former, federal law does not govern the transaction and the parties are likely bound by the terms of their agreement, but if the latter, Clemons may be entitled to rescind the transaction pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*. It is necessary then for the Court to address this issue at the outset.

The TILA is a federal statute that governs the terms and conditions of consumer credit, including certain mortgage loans, in an effort to protect consumers from the uninformed use of credit and inaccurate and unfair credit practices. See 15 U.S.C. § 1601(a). As a remedial measure, the TILA entitles a consumer to rescind a transaction if a creditor fails to make specific disclosures required by the statute. See 15 U.S.C. § 1635(f). The Act defines the term "mortgage," in part, as "a consumer credit transaction that is secured by the consumer's principal dwelling." 15 U.S.C. § 1602 (aa)(1). Additionally, the Act's implementing regulation, Regulation Z, 12 C.F.R. § 226, clarifies that a "security interest" is "an interest in property that secures performance of a consumer credit obligation and that is recognized by state or federal law." 12 C.F.R. § 226.2(a)(25). That is, the TILA may apply here if Virginia law classifies the instant transaction as a loan secured by Clemons's dwelling.

Under Virginia's equitable mortgage doctrine, a court may find that an instrument appearing to convey fee simple title is actually a mortgage loan in which the grantee holds a mortgagee's interest and must reconvey the property to the grantor when the grantor repays the underlying debt. Seven Springs, Inc. v. Abraham, 159 B.R. 752, 755 (E.D. Va. 1993). Yet, such instances are rare. For a deed absolute on its face is presumed absolute unless the party challenging the presumption can prove by "clear, unequivocal and convincing evidence" that the instrument is something other than what it purports to be. Pretlow v. Hopkins, 30 S.E.2d 557, 558 (Va. 1947).

The court's threshold consideration is whether the parties enjoy a borrower-lender relationship. Seven Springs, Inc., 159 B.R. at 756. A mortgage may exist if after an instrument is executed there is some debt owed by the grantor to the grantee which is secured by title to the property. Johnson v. Johnson, 33 S.E.2d 784, 789 (Va. 1945); Magee v. Key, 191 S.E. 520, 523-24 (Va. 1937); Hunter v. Bane, 149 S.E. 467, 468 (Va. 1929); Tuggle v. Berkeley, 43 S.E. 199, 201 (Va. 1903). On the other hand, an absolute sale occurs if after a conveyance no debt remains due from the grantor to the grantee. Holladay v. Willis, 43 S.E. 616, 618 (Va. 1903). "The existence of a debt is the test." Id. Only after a borrower-lender relationship is established, may the court take account of whether the following additional factors also support the existence of a mortgage: (1) the intentions of the parties; (2) the adequacy of consideration; (3) the retention of possession by the grantor; and (4) the satisfaction or survival of the debt. Seven Springs, Inc., 159 B.R. at 756.

Here, there was no debt owed by Clemons to Home Savers at the time of the transaction. Home Savers assumed Clemons's mortgage and paid her an additional $5,047.90 as consideration for the property. Neither the Agreement of Sale nor the Lease Agreement required Clemons to repay the $5,047.90 or any other sum.

Although Clemons had an option to repurchase the property, that option did not give rise to a debt. First, Clemons was not obligated to repurchase the property. At the end of the parties' five-month Lease Agreement, Clemons could have vacated the property with $7,047.90[3] from Home Savers and with no duty to repay that sum. Home Savers certainly could have sold the property to a third party, but it would have no recourse against Clemons if it was unable to recover its expenses.

---

[3]The Option Agreement required Home Savers to pay Clemons $2,000, in addition to the $5,047.90 it paid upon purchase, if she voluntarily vacated the property at the end of the five-month lease.

Second, even if Clemons decided to repurchase the property, the parties never agreed to a fixed repurchase price.[4] Instead, the Option Agreement permitted Clemons to repurchase the property for 90 percent of its then appraised fair market value. If, for example, the property appraised at $110,000, Clemons was not obligated to make up the difference between the original sale price and the repurchase price. She could have repurchased the property for $99,000, resulting in a $15,624.71 loss for Home Savers. If, however, the property appraised at $150,000, as projected by Law, Clemons could have repurchased the property for $135,000, resulting in a $20,375.29 profit for Home Savers. Surely Home Savers hoped for the latter result, but the Court cannot conclude that a loan occurred when there was no guarantee that Home Savers would recoup the $5,047.90 it paid Clemons to purchase the property.[5]

Facing foreclosure proceedings, Clemons took advantage of the only available opportunity to remain in her home. She sold her home to Home Savers intending to repurchase the property in

---

[4]Clemons relies on several Virginia Supreme Court cases to support her argument that the instant conveyance served as security for a loan. But, those cases all involved repayment of a fixed sum. In Tuggle v. Berkeley, 43 S.E. 199 (Va. 1903), a widow conveyed her life estate to a son-in-law in consideration of his promise to pay $600 in delinquent taxes on the property. The court construed the sale as a mortgage loan because the deed expressly provided that Tuggle would reconvey the property whenever his mother-in-law repaid the $600 with interest. Id. at 199-201. In Magee v. Key, 191 S.E. 520 (Va. 1937), a widow attempted to purchase her deceased husband's property at a public auction by securing $450 of the purchase price from one of her husband's creditors. The court found that a deed of bargain and sale conveying the property to the creditor was instead a deed of trust because it required the creditor to reconvey the property if the widow repaid the $450 within less than six months. Id. at 521, 523. And, in Johnson v. Johnson, 33 S.E.2d 784 (Va. 1945), Johnson conveyed three parcels of property encumbered by a $13,168.99 debt to his brother in an effort to avoid foreclosure proceedings. The court determined that the transaction constituted a mortgage because it permitted Johnson to redeem the property by reimbursing his brother for the amount he paid on the debt plus maintenance expenditures. Id. at 789-90. In contrast, the repurchase price here was not based on the amount Home Savers paid at the time of the transaction, but instead depended on a future valuation of the property.

[5]Because Clemons was not indebted to Home Savers, the Court need not consider whether any additional factors support the existence of a mortgage. See Seven Springs, Inc., 159 B.R. at 756.

five months. Having refinanced three times, Clemons certainly understood that her agreement with Home Savers was unlike her previous mortgage loan. Indeed, Clemons twice confirmed her understanding of the transaction as an absolute sale with an option to repurchase – she indicated her desire to repurchase the property in a February 2007 letter, and she acknowledged that Home Savers owned the property in a March 2007 written agreement. Despite her desire to repurchase the property, Clemons was unable to resolve her financial difficulties in the time provided by the parties' Option Agreement.

While the Court sympathizes with Clemons's plight, her characterization of the instant transaction as an equitable mortgage is unsupported by Virginia law. Because the conveyance was an absolute sale to which the TILA does not apply, the Court GRANTS Home Savers motion for summary judgment as to Count VI.

**B.     Clemons's State Law Claims**

      **1.     Mortgage Lender and Broker Act, Va. Code Ann. § 6.1-408 *et seq.* (Count VIII)**

The Mortgage Lender and Broker Act ("MLBA"), Va. Code Ann. § 6.1-408 *et seq.*, incorporates the disclosure requirements contained in the TILA. See Va. Code Ann. § 6.1-422(A)(6). Accordingly, Clemons also seeks damages and attorney's fees under this state statute. The MLBA defines a "mortgage loan," in part, as "a loan made to an individual, the proceeds of which are to be used primarily for personal, family, or household purposes, which loan is secured by a mortgage or deed of trust upon any interest in . . . residential owner-occupied property located in the Commonwealth." Va. Code Ann. § 6.1-409. As set forth above, the Court finds that the instant transaction was not a loan. Because the conveyance was an absolute sale to which the MLBA does not apply, the Court GRANTS Home Savers motion for summary judgment as to Count VIII.

### 2. Fraud (Count I)

Clemons alleges Home Savers made a number of material misrepresentations to induce her acceptance of its proposal. In particular, she claims that Home Savers "presented the transaction . . . as if it was a refinance," and that Law and Gray assured her that she was "not divesting herself of any rights, title and interest to said property." Compl. ¶ 23.

Fraud is a tort, defined as the knowing misrepresentation of material fact relied upon by the plaintiff to her detriment. Lissman v. Hartford Fire Ins. Co., 848 F.2d 50, 52-53 (4th Cir. 1988). In order to prevail, a plaintiff must prove fraud by clear and convincing evidence. Meridian Title Ins. v. Lilly Homes, Inc., 735 F. Supp. 182, 185 (E.D. Va. 1990). What's more, a plaintiff must demonstrate that her reliance was reasonable and justified. Id. at 185. A party cannot claim to have reasonably relied upon a representation when she makes only a partial inquiry and elects not to exhaust readily available sources of information. Id. at 186.

In this case, there is no clear and convincing evidence that Home Savers made any material misrepresentations. Clemons admits Law explained that Home Savers would purchase her home, become her landlord, and make her mortgage payments. Pl. Dep. 49:12-16; 63:16-22. Clemons acknowledges that the Agreement of Sale and Lease Agreement, which she signed, were consistent with her understanding of the transaction. Pl. Dep. 63:7-22; 74:15-77:11. Namely, Clemons understood that she was selling her home and that she would have an opportunity to repurchase the property in five months. Id. Clemons also concedes that Home Savers abided by the terms of their agreement, while she failed to satisfy the conditions required to repurchase the property. Pl. Dep. 52:18-23; 106:3-107:23.

Nevertheless, Clemons maintains that the transaction was "not explained completely," Pl. Dep. 126:6-7, and that Home Savers persuaded her to execute the Option Agreement although it knew

9

she would be unable to comply with the terms, Compl. ¶¶ 25, 27. Even if true, a duty to disclose does not ordinarily arise when parties are engaged in an arm's length transaction. See Bank of Montreal v. Signet Bank, 193 F.3d 818, 829 (4th Cir. 1999). Nothing in the record suggests that Home Savers was under any legal duty to clarify for Clemons the terms of the agreement or divulge whether it thought she would be able to repurchase the property. Moreover, Clemons cannot complain that she was uninformed when she chose not to make her own inquiry either prior to the transaction or when offered an opportunity to ask questions by the attorney at closing.

By signing the Agreement of Sale, Deed of Assumption, and Lease Agreement, Clemons bound herself to their terms. Because she has not shown that her assent to these documents was obtained by fraud, the Court GRANTS Home Savers motion for summary judgment as to Count I.

**3.      Conversion (Count III)**

Clemons also argues that Home Savers deprived her of "equity, residential property, money and title" by intentionally converting her residence to its use. Compl. ¶ 41. But, this claim does not lie as a matter of law. A conversion is "[any] wrongful exercise or assumption of authority . . . over another's *goods*, depriving him of their possession, [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." SSMC, Inc. v. Steffen, 102 F.3d 704, 711 (4th Cir. 1996) (quoting United Leasing Corp. v. Thrift Ins. Corp., 440 S.E.2d 902, 905 (Va. 1994)) (additional citation omitted) (emphasis added). Plainly, the tort of conversion pertains to goods.[6] Clemons, however, accuses Home Savers of converting her real property and money. Nowhere in her complaint does she allege that Home Savers deprived her of any personal property. Even assuming, *arguendo*, that a denial of real property or money is actionable as conversion, Home

---

[6] Goods are any "tangible or movable personal property other than money." Black's Law Dictionary (8th ed. 2004).

Savers cannot be guilty of converting property to which it is entitled by contract. Accordingly, the Court GRANTS Home Savers motion for summary judgment as to Count III.

### 4. Unjust Enrichment (Count IV)

Clemons next contends that Home Savers was unjustly enriched when it knowingly accepted and retained her "real property, record title and/or money despite having no legal or equitable claim thereto." Compl. ¶¶ 46-47. Again, this claim does not lie as a matter of law. It is well settled that "where a contract governs the relationship of the parties, the equitable remedy of . . . unjust enrichment does not lie." WHR Mortg., Inc. v. S.A.S. Assocs., 214 F.3d 528, 534 (4th Cir. 2000). In the case at hand, the parties executed an Agreement of Sale, Deed of Assumption, and Lease Agreement. Both Clemons and Home Savers are bound by the terms of these contracts. Thus, the Court GRANTS Home Savers motion for summary judgment as to Count IV.

### 5. Breach of Implied Covenant of Good Faith & Fair Dealing (Count V)

Finally, Clemons accuses Home Savers of breaching an implied covenant of good faith and fair dealing by denying her rights under state and federal law, denying her rights under the parties' contract, entering the contract with no intention of fulfilling its responsibilities, and denying her fair proceeds from the sale of the property. These arguments have no merit.

Under Virginia law, the duty of good faith and fair dealing implicit in every contract "cannot be used to override or modify *explicit* contractual terms." Riggs Nat'l Bank v. Linch, 36 F.3d 370, 373 (4th Cir. 1994) (emphasis added); Ward's Equipment v. New Holland North America, 493 S.E.2d 516, 520 (Va. 1997) ("[An implied covenant of good faith and fair dealing] cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist."). Though, "a party may not exercise contractual *discretion* in bad faith." Virginia Vermiculite, Ltd. v. W.R.Grace & Co., 156 F.3d 535, 542 (4th Cir. 1998) (emphasis in original). It appears that with this

claim Clemons seeks to rewrite a contract she now regrets entering into. The parties executed an agreement whereby Home Savers purchased Clemons's home, leased the property back to Clemons, and granted Clemons an option to repurchase the property after five months. Clemons admits that Home Savers fully complied with the explicit terms of the parties' agreement, while she failed to satisfy the conditions required to repurchase the property. She offers no evidence that Home Savers exercised any discretion under the agreement, let alone that it exercised its discretion in bad faith. The Court GRANTS Home Savers motion for summary judgment as to Count V.

      **6.**      **Equitable Remedies (Counts IX, X, XI)**

Based on her claim that the instant transaction was an equitable mortgage, Clemons asks the Court to impose a number of equitable remedies that in effect would void the parties' agreement. Because the Court finds that the conveyance was an absolute sale, equitable relief here is unwarranted. The Court GRANTS Home Savers motion for summary judgment as to Counts IX, X, and XI.

## IV.  ORDER

For the foregoing reasons, the Court ORDERS that Home Savers's motion for summary judgment [Document No. 22] is GRANTED as to all counts and Clemons's motion for summary judgment [Document No. 27] is DENIED as to all counts.

The Clerk is directed to enter judgment for the defendant.

The Clerk shall mail a copy of this Order to all counsel of record.

                                                    /s/
                                            Tommy E. Miller
                               UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
January 15, 2008